W. H. MONTGOMERY et al. v. S. S. McCONNELL, Receiver, etc., CITIZENS BANK OF LEXINGTON.

Western Section.    February 25, 1927.

No petition for Certiorari was filed.

Equity. Evidence. One seeking equitable relief of cancellation of note must prove himself entitled to the relief by evidence that is clear, cogent and convincing.

In an action to have a note for $1600 on which the maker had already paid $800 set aside for lack of consideration and where the evidence of the complainant was not clear, and left many things unexplained, held that the complainant was not entitled to the equitable relief sought.

Appeal from Chancery Court, Henderson County; Hon. T. C. Rye, Chancellor.

Essary & Dennison, of Lexington, for appellant.

John F. Hall, of Lexington, for appellee.

SENTER, J. The original bill was filed in this cause as a petition in the cause of State of Tennessee, ex rel. S. S. McConnell, etc., v. Citizens Bank of Lexington, or as an original bill to be consolidated with said cause, then pending in the chancery court of Henderson county, Tennessee, where said bank was being liquidated.

The bill alleges in substance that W. H. Montgomery was formerly engaged in the mercantile business at Lexington, Tennessee, under the firm name and style of Montgomery & Son, and that on January 18, 1923, his stock of merchandise was destroyed by fire. The bill alleges that at the time said fire occurred complainant was indebted to several wholesale firms, and to the Citizens Bank of Lexington, and in order to satisfy the creditors, the insurance collected on the merchandise destroyed by fire was paid over to A. S. Montgomery by agreement with the creditors, and that said A. S. Montgomery as such trustee, collected the insurance and paid the same out of the debts of Montgomery & Son.

The bill alleges that certain notes which said firm of Montgomery & Son owed to said Citizens Bank were charged to the account of said A. S. Montgomery, trustee, and to be paid by said trustee out of the insurance money. The bill then alleged that in addition to the notes of complainant, the Citizens Bank also charged to the account of said A. S. Montgomery, trustee for complainant, certain notes and interest of one M. M. Stanford, aggregating more than $1,000. The bill alleges that the charging of the said Stanford notes and interest was unauthorized and without any consideration or agreement upon the part of complainant to pay said notes of said Stanford. The bill alleges that H. E. Graper, the directing head of said Citizens Bank of Lexington, after the fire occurred and before all the insurance was collected informed him that his account was overdrawn by A. S. Montgomery, trustee, in the payment of debts to creditors and notes to the bank, and requested that he execute a note in the sum of $4500 to cover the same; that Mr. Graper did not at that time advise him that the Stanford notes aggregating more than $1,000 with interest accrued, had been charged to the account, and that he therefore executed the $4500 note in ignorance of the fact that the Stanford notes and interest were included. When insurance was applied to the $4500 note there remained a balance of $1500, plus $100 interest, and to cover which complainant W. H. Montgomery executed his note dated February 23, 1923, and due December 23, 1923. It is this $1600 note that is involved in this litigation. On April 25, 1924, W. H. Montgomery paid $800 on the $1600 note, leaving a balance due on that date of $800. The bill alleges that at the time of the execution of the $1600 note he did not know that the Stanford notes and in-

terest had been charged to his account, and did not discover this fact until the $800 payment was made on the $1600 note.

It is alleged in the bill that in April, 1921, H. E. Graper, who was then the managing head of the Citizens Bank, had taken a lot of merchandise from |W. M. Stanford, of Yuma, Tennessee, in settlement of certain debts owed by Stanford to said bank, and that Mr. Graper endeavored to sell to complainant W. H. Montgomery this merchandise; that a quantity of merchandise was taken to the store of Montgomery & Son packed in boxes and trunks where the same could be inspected by W. H. Montgomery, and with the agreement and understanding that Montgomery would use such of the merchandise or buy such of the merchandise as he could use after inspecting the same, and that he did accept and take out of said lot of merchandise such as he could use in his business, amounting to about $194, and that because of the price of the merchandise, and because he learned before inspecting the remainder of the merchandise that W. M. Stanford had gone into bankruptcy, and he did not desire to buy the merchandise after he learned of this fact, and through A. S. Montgomery, his brother, who was then the president of the Citizens Bank, notified Mr. Graper that he could not use anymore of the merchandise and requested Mr. Graper to remove the same from his store. He states that the merchandise remained in the store from the time he received it in April, 1921, until it was destroyed in the fire which occurred on January 18, 1923, and that the same remained in the boxes and trunks, and had not been taken out by him.

The answer denies all material allegations in the bill.

At the hearing of the cause the Chancellor denied the relief sought and dismissed the bill at the cost of complainant. We will add that the original bill sought to recover against the defendant the amount of the Stanford notes and interest aggregating the sum of $1175.47, less the balance due on said $1600 note, and less the sum of $194 representing the merchandise received by complainant from Graper.

From the decree of the Chancellor complainant has appealed, and has assigned as error the action of the court in holding that H. E. Graper was authorized to charge the W. M. Stanford notes to the account of A. S. Montgomery, trustee, and second, in holding that W. H. Montgomery is estopped from denying the purchase of the goods, and third, in holding that the action and conduct of W. H. Montgomery in permitting the Stanford merchandise to remain in his storehouse from April, 1921, to January, 1923, when the same was destroyed by fire, operated as an estoppel.

It is contended for appellant under the assignments of error, that W. H. Montgomery never at any time purchased the Stanford

merchandise, except to the amount of $194 and that he never assumed the payment of the Stanford notes charged against his account by the bank; that he promptly informed Mr. Graper that he would not purchase the merchandise in question, except the $194 which he accepted and put into his stock. W. H. Montgomery testified that one Rush Oakley first approached him on the subject of buying this merchandise, and informed complainant that the Citizens Bank had some merchandise purchased from one of its customers in the collection of a debt, and suggested that it could be bought at a bargain. He states that he told Oakley that he would see Mr. Graper about it, and that he then went to see Mr. Graper, and Mr. Graper told him that he had a quantity of merchandise that he desired to sell, and that it was then boxed up where it was impossible for him to examine it, and at the suggestion of Mr. Graper the merchandise was sent to Montgomery's store where he could unbox it and examine it, and in the event he could use the goods he was to buy it, and that Mr. Graper had Mr. A. S. Montgomery, who was the then president of the bank and a brother of complainant W. H. Montgomery, to go to the store to go through the goods with him and to assist in checking the same out. He testified that A. S. Montgomery assisted in taking a part of the goods out of the boxes and opening the packages and checked out some of the goods that complainant thought he could use, agreeing on the price that he should pay and placing the goods back in the boxes that he could not use and fastened them up. He testified that they did not finish examining the goods at that time and that a few days later A. S. Montgomery came back to finish going through and checking out the balance of the merchandise, and that they then opened one or more of the packages that had not been opened but found nothing that he thought he could use, and in addition thereto he had learned that the party from whom the goods had been purchased by Graper had gone into bankruptcy, and he did not think it advisable to undertake to handle the goods and so informed A. S. Montgomery and requested of A. S. Montgomery to notify Mr. Graper to have the goods removed and that he would pay for the goods taken out of the boxes the first evening, amounting to $194. He states that at different times after that he requested Mr. Graper to have the goods taken out of his store, that they were in his way, and as soon as the same were removed he would pay for the amount taken out, $194, but that Graper never removed the goods and he never had a settlement with him for the amount of goods taken out, and this merchandise was burned at the time the store was destroyed by fire in January, 1923. He further testified that after the $1600 note was given, and the $800 payment made on the same, he discovered that he

had been charged by the bank with the Stanford debt and interest, amounting to about $1175, and sought to have Mr. Graper straighten the matter up. He testified that pending the collection of the insurance he executed the note for $4500 to the bank to cover what was represented to him as being overdraft in his account, and that when the insurance was collected and applied to his account at the bank and to the $4500 note, there remained a balance of $1600, and for which he gave the $1600 note in question. He testified that he did not discover that the Stanford items had been charged to him and paid out of his account until he received balance sheet about the first of May, 1923, and that he called Mr. Graper about the second day after receiving the balance sheet, and took the matter up with him with reference to this alleged wrongful charge, and that Mr. Graper told him that this charge was a mistake and that he would adjust it. It appears from an exhibit to the deposition of W. H. Montgomery that about June 18, 1924, Mr. Graper addressed a communication to W. H. Montgomery, requesting a renewal of the balance on the note, and enclosed with the communication a note in the sum of $864 to be signed by Montgomery, and that in reply to this request from Mr. Graper W. H. Montgomery addressed a communication to Mr. Graper in which he stated he did not wish to renew the note, and that he was and had been ready to settle ever snice he was in Mr. Graper's office some weeks prior.

Mr. Graper died in September, 1924, and it seems nothing further was done with reference to the matter after the communications of June, 1924, passing between Mr. W. H. Montgomery and Mr. Graper.

Reference is made in the communication from Graper to W. H. Montgomery that the renewal note covering the balance on the $1600 note be executed "until you and Rush can get the settlement through." The "Rush" referred to is presumably Rush Oakley. In the reply written by W. H. Montgomery further reference is made to Oakley, where Mr. Montgomery says in the letter "but if as you suggest that Rush and I settle, then I shall ask that you return to my credit with such interest as you have charged me with all the money that is due my account that was credited to the Stanford account in total around $1200 and interest, then charge the account with my note and I will at once settle with Rush." These communications are not specifically explained by W. H. Montgomery in his evidence. He stated in his evidence that the only connection that Rush Oakley had with reference to the Stanford merchandise, was that Stanford wanted to collect his drayage charges for hauling the merchandise from Yuma to Lexington, and from the bank of Lexington to Montgomery's store. Yet it would appear from this correspondence that this man, Rush Oakley, had

some personal interest or connection with the merchandise which he delivered to the Montgomery store. This whole transaction seems vague and mysterious. The exact facts with reference to this merchandise are but vaguely stated. A careful reading of the record does not disclose just how or why Montgomery was charged with the Stanford notes and interest. It is significant that this merchandise remained in Montgomery's store from April, 1921, until it was burned in the fire which destroyed the stock of merchandise of W. H. Montgomery in January, 1923, a period of about twenty months, and during all of which time Mr. Graper made no successful effort to dispose of it to anyone else. The record does not disclose just how Graper came into possession of this merchandise, but the inference from the evidence is that it was taken by Graper from Stanford shortly before Stanford's bankruptcy proceedings on indebtedness owed by Stanford to the bank. It is very probable that Mr. Graper knew of the failing financial condition of W. M. Stanford and took this merchandise on Stanford's indebtedness to his bank, and was seeking to dispose of it in a way that the trustee in bankruptcy would not discover it, or at least he must have had some such object in view. It is also significant that A. S. Montgomery, who was the president of the bank and the brother of W. H. Montgomery, was aiding in the disposal of this merchandise to his brother, although he testifies that his brother did not purchase but a part of the merchandise amounting to about $194, and requested him to notify Mr. Graper that he could not use the balance. Another fact and circumstance to be looked to is with reference to the execution of the $4500 note by W. H. Montgomery to cover an overdraft in part created by the Stanford notes and interest being charged to his account in February, 1923, and then after the insurance money was collected and applied, there remained a balance of $1600 principal and interest on the $4500 note, and W. H. Montgomery executed the $1600 note in question to take care of that balance on the $4500 note, and which satisfied the $4500 note. He was a business man of broad business experience, and his evidence as to why he executed the $4500 note without ascertaining of what items it consisted and what items had been charged to his account so as to create the necessity for the execution of the $4500 note is not at all clear or satisfactory. He does not deny the execution of the $1600 note and the purpose for which it was executed, and his failure to discover at that time that the Stanford paper had been charged to him is not satisfactorily explained.

We do not think that the evidence is sufficient to warrant the relief sought in the bill. We are of the opinion that to enable the complainant to have the $1600 note, with a credit of $800 thereon,

cancelled and held void for lack of consideration, the evidence should be clear, cogent and convincing. We do not think that the evidence is either clear, cogent or convincing. We are also of the opinion that the Chancellor reached the correct conclusion, and properly decreed, that as a fact the account of A. S. Montgomery, trustee, was properly charged with the items complained of, and that H. E. Graper was authorized to charge the W. M. Stanford notes and interest to the account of A. S. Montgomery, trustee, handling the insurance money of the complainant W. H. Montgomery. We are of the opinion that the conclusion reached by the Chancellor as to these facts is warranted by a preponderance of the evidence when viewed in the light of all the facts and circumstances surrounding the transaction and as disclosed by the record.

It results that all assignments of error are overruled and the decree of the Chancellor is affirmed. Complainant W. H. Montgomery and sureties on the appeal bond will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.